## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DR. STEVEN A. GUTTENBERG, et al.,

Plaintiffs,

v.

DR. ROBERT W. EMERY, et al.,

Defendants.

Civil Action No. 13-2046 (JDB)

## MEMORANDUM OPINION

This case involves a dispute over alleged breaches of a non-disparagement provision in a settlement agreement between two former business partners. Currently before the Court are [ECF No. 11] plaintiffs' motion to file an amended complaint and to seal the case or, in the alternative, to seal portions of the record; [ECF No. 7] plaintiffs' motion for expedited discovery and to set a status conference; and [ECF No. 10] plaintiffs' motion for a preliminary injunction.

## BACKGROUND

Dr. Guttenberg and Dr. Emery were joint shareholders of an oral surgery practice for about twenty years before their relationship soured. Pls.' Memo. in Supp. of Mot. for Prelim. Inj. [ECF No. 10-1] 2. Dr. Guttenberg filed a lawsuit against Dr. Emery back in 2008 over some issues that arose during the fallout of their professional relationship, but the parties quickly settled that case. Id. The settlement agreement entered into by Drs. Guttenberg and Emery contained, among other things, a non-disparagement provision. Id. That provision, and the alleged breach of that provision, is what this case is about. Plaintiffs, Dr. Guttenberg and his professional corporation, allege that purported violations of the non-disparagement provision by defendants, Dr. Emery and his wife, are causing them to lose referral sources and thus clients.

1

Plaintiffs initially filed this case in D.C. Superior Court in November 2013, and defendants removed it to this Court in late December 2013. Notice of Removal [ECF No. 1] ("Notice of Removal"). A week later, defendants filed a motion to dismiss. Defs.' Mot. to Dismiss [ECF No. 3] ("Defs.' Mot. to Dismiss"). Plaintiffs opposed that motion, and filed three motions of their own: a motion to amend and seal, a motion to expedite discovery and to set a status conference, and a motion for a preliminary injunction. See Pls.' Mot. to Amend & to Seal Case [ECF No. 11] ("Pls.' Mot. to Amend & Seal"); Pls.' Mot. to Expedite Disc. & to Set a Status Conf. [ECF No. 7] ("Pls.' Mot. to Expedite Disc."); Pls.' Mot. for Prelim. Inj. [ECF No. 10] ("Pls.' Mot. for Prelim. Inj."). Those motions have now been fully briefed, with the exception of defendants' motion to dismiss, which the Court does not decide at this time. The Court will consider each of the other motions in turn.

## I.      PLAINTIFFS' MOTION TO AMEND

Under Federal Civil Rule 15, plaintiffs may amend their complaint once as a matter of right within twenty-one days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). Defendants electronically served their motion to dismiss on plaintiffs on December 31, 2013, and plaintiffs filed a motion to amend on January 22, 2014, twenty-two days later. See Defs.' Mot. to Dismiss; Pls.' Mot. to Amend & Seal. The Court was closed due to inclement weather on the twenty-first day after defendants served their motion to dismiss—January 21, 2014—and because plaintiffs sought to file their amended complaint under seal, they could not file electronically. Under Federal Civil Rule 6, if the Clerk's office is inaccessible on the last day for filing, as it was here, then the time for filing is extended to the first accessible day, and in this case that day was January 22, 2014, the day plaintiffs filed their motion to amend. Fed. R. Civ. P. 6(a)(3)(A); see Pls.' Mot. to Amend & Seal. Hence, plaintiffs timely filed their amended

complaint, and thus amendment is as of right under Rule 15. The Court will therefore order the Clerk to file plaintiffs' proposed amended complaint, attached as Exhibit 1 to plaintiffs' motion to amend, as their amended complaint.

## II.   PLAINTIFFS' MOTION TO SEAL AND TO FILE THEIR AMENDED COMPLAINT WITH REDACTIONS

Plaintiffs seek to seal the entire case or, in the alternative, to file their amended complaint with certain proposed redactions. See Pls.' Mot. to Amend & Seal. Defendants oppose both requests. This Court has the discretion to decide whether this case should remain under seal, United States v. Hubbard, 650 F.2d 293, 316 (D.C. Cir. 1980) (quoting Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 599 (1978)), and "the starting point in considering a motion to seal court records is a 'strong presumption in favor of public access to judicial proceedings,'" EEOC v. Nat'l Children's Ctr. Inc., 98 F.3d 1406, 1409 (D.C. Cir. 1996) (quoting Johnson v. Greater Se. Cmty. Hosp. Corp., 951 F.2d 1268, 1277 (D.C. Cir. 1991)). The D.C. Circuit has laid out six factors for courts to consider when determining whether to seal court records: (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property or privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceeding. Hubbard, 650 F.2d at 316-17.

### a.   The Need for Public Access to the Documents

Public access to judicial records is "fundamental to a democratic state" and "serves the important function[] of ensuring the integrity of judicial proceedings . . . ." Id. at 315 & n.79. Plaintiffs argue that because "this case is a private dispute between private individuals" involving the alleged breach of a non-disparagement provision, the need for public access is low.

Pls.' Memo. in Supp. of Mot. to Amend & Seal at 5. But the purpose of ensuring the integrity of judicial proceedings is not served by the public having access only to cases involving "public" disputes between "public" parties. See Upshaw v. United States, 754 F. Supp. 2d 24, 28 (D.D.C. 2010) ("Plaintiff, quite simply, misconstrues the relevant inquiry and completely ignores the strong public interest in the openness of judicial proceedings, which exists irrespective of whether the proceedings at issue relate to disputes among private litigants."). Few civil cases are of interest to anyone but the litigants and the courts; most involve "private" disputes. The public's access to civil cases involving private disputes is intended to serve as a check on the judiciary: because judicial proceedings are by default public, litigants can be confident that they will be treated fairly and justly. Hence, this factor weighs against sealing the entire case.

Plaintiffs argue, however, that even if sealing the entire case is not appropriate, the Court should permit plaintiffs to redact certain information contained in their amended complaint. The only material not already accessible to the public is plaintiffs' amended complaint, their motion to amend under seal, defendants' opposition, and plaintiffs' reply. But plaintiffs object only to disclosure of material contained in new paragraphs 17 and 20 in their amended complaint (and repeated in the briefs on sealing). Paragraph 17 contains a more specific description of the alleged statements purportedly violating the non-disparagement provision and giving rise to this action, while paragraph 20 adds only a more specific—yet still somewhat general—description of the third parties to which the statements were purportedly made.[1] In other words, in plaintiffs'

---

[1] The Court ultimately concludes that neither sealing the whole case nor sealing the specific portions of the record is appropriate. To give context to the Court's analysis—which necessarily relies on the precise portions of the record at issue—the Court reproduces the relevant paragraphs (which are to be unsealed) here. A redline of the new paragraph 17 and its predecessor reads as follows (with the old material struck through and new underlined):

"On or about September 23, 2013, Defendant Borg-Emery ~~made disparaging representations to a dental hygienist~~was in the public waiting room at a veterinary office in Virginia and began talking to a woman who was a dental hygienist in Vienna, Virginia. Defendant Borg-Emery told the hygienist, inter alia, that Dr. Guttenberg was a sexual deviant, received oral sex under the table at his office and cheated on his wife.

previous complaint, they described the offending statements in general terms, and have now described them more specifically, likely in an effort to satisfy <u>Twombly</u> and <u>Iqbal</u> in light of defendants' motion to dismiss for failure to state a claim. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 558 (2007). The public has at least some interest in understanding what needs to be pleaded to satisfy the pleading standard. Yet while the public may be interested to know the more salacious details of the purported statements, plaintiffs are not public figures, so the public does not have a very compelling need to know the particulars.

At bottom, though, two considerations drive the Court's analysis of this factor. First, the differences between plaintiffs' initial descriptions of the statements and the new, more specific descriptions are not substantial. In both, plaintiffs describe statements that, if true, could be viewed as disparaging: both describe marital infidelity and sexual relationships with coworkers. The only real differences are (1) a particularly specific detail of a sexual encounter, (2) an unfavorable characterization of Dr. Guttenberg, and (3) a more specific—though not fully revealing—description of the person to whom the statements were made.[2]

Second, the interest in public access here would be substantially impeded if the Court were to grant even the proposed redactions. If the Court did so, it would effectively be committing itself to adjudicate the entire case at least partially under seal. Any opinion on

---

She also stated that he had other affairs, including sexual intercourse at the office. These statements were later , later [sic] restated to a dentist <u>in Virginia</u> with professional relations with Plaintiff Guttenberg, ~~namely that Guttenberg had engaged in illicit and heinous acts with his employees and had engaged for substantial lengths of time in marital infidelity.~~"

The previous version of paragraph 20 reads in relevant part: "On information and belief, Emery and Borg-Emery have made other disparaging representations to third parties . . . ." Defs.' Opp'n to Pls.'s Mot. to Amend & Seal, Ex. 1 [ECF No. 16-1] 5. The new version reads in relevant part: "On information and belief, Emery and Borg-Emery have made other disparaging representations to third parties, <u>including other dental and medical professionals</u> . . . ." <u>Id.</u> (emphasis added).

[2] The differences in paragraph 20 are de minimis. <u>See</u> supra n.1.

defendants' pending motion to dismiss will likely need to analyze whether plaintiffs' allegations are specific enough to state a claim, and plaintiffs would undoubtedly argue (for the same reasons) that specifics of that discussion would need to be redacted. If the case were then to go forward, any summary judgment motion containing evidence supporting the paragraphs at issue would need to be filed partially under seal for the same reason, and any opinion on such a motion would likewise need to be redacted. And if the case were to proceed to trial, the Court would likely need to seal the proceedings while receiving testimony on a central issue of the case: whether defendants made a statement or statements that violated the non-disparagement provision. In other words, the public's access to this proceeding would be substantially impeded if the Court were to grant plaintiffs' motion—which, if granted, would protect precious few additional details, hardly justifying the harm to the public's interest. See Hubbard, 650 F.2d at 318 (where documents are "specifically referred to in the trial judge's public decision," public has a need for those documents).

> **b.      Previous Public Access to the Documents**

"Previous [public] access is a factor which may weigh in favor of subsequent [public] access." Hubbard, 650 F.2d at 318. And "when much of the critical information is already in the public forum . . . this factor weighs in favor of unsealing the . . . materials." Zapp v. Zhenli Ye Gon, 746 F. Supp. 2d 145, 149 (D.D.C. 2010). Plaintiffs did not initially seek to file their complaint under seal, so it has been publicly accessible for several months, along with the rest of the docket. The public's previous access to most of the documents in this case, then, weighs against sealing the entire case. The lack of prior access to the more specific description in paragraph 17 weighs in favor of redacting that paragraph, but only just. After all, the public has had access to the general nature of the statements for months now. And the little added by

plaintiffs to paragraph 20 weighs in favor of disclosure of that paragraph, particularly because the detail that plaintiffs added is obvious given the context of this suit—the public has in effect already had access to all of the information in that paragraph.

### c.      Plaintiffs' Objection to Disclosure

Defendants acknowledge that plaintiffs' motion to seal the record weighs in favor of sealing the case and in favor of sealing paragraphs 17 and 20. Defs.' Memo. in Opp'n to Pls.' Mot. to Amend & Seal [ECF No. 16] 21; see Nat'l Children's Ctr., 98 F.3d at 1410 (finding that "only one Hubbard factor counsels in favor of sealing the consent decree—the fact that the [movant] has objected to the disclosure.").

### d.      Plaintiffs' Diminished Privacy Interests

For this factor, the D.C. Circuit in Hubbard considered "the objecting party's privacy interest in the particular documents, . . . rather than the effect that unsealing the documents would have on the party's . . . privacy interests generally." Friedman v. Sebelius, 672 F. Supp. 2d 54, 60 (D.D.C. 2009). Courts have interpreted this to mean that, for example, qui tam relators usually cannot keep a case sealed simply because they want to keep their involvement in the suit private. See United States ex rel. Grover v. Related Cos., LP, 11-1861, 2013 WL 6037213, at *4 (D.D.C. Nov. 14, 2013); Upshaw, 754 F. Supp. 2d at 29. Instead, under this factor, the party seeking to avoid disclosure must identify specific privacy interests in the documents at issue. Plaintiffs here do not have a generalized privacy interest in the entire case; they demonstrated as much by not seeking to file their initial complaint under seal. Hence, this factor weighs against sealing the entire case. Instead, plaintiffs' supposed privacy interests here relate to the specifics of the alleged statements. They argue that the very nature of the dispute shows the privacy interests at stake: because plaintiffs are trying to keep defendants from making statements about

a subject matter that, under their settlement agreement, is to be kept confidential, disclosing the subject matter of the statements here frustrates plaintiffs' purpose altogether. Defendants counter that in the initial, unsealed complaint, plaintiffs included a description of the statements' subject matter, and that plaintiffs now seek to protect only an incrementally more specific description of those statements. Defendants have the better argument here for, as discussed above, plaintiffs included the general subject matter of the alleged disparaging statements when they filed the suit, and the more-specific statements reveal very little extra information—the genie is already out of the bottle.

Plaintiffs also contend that no one would bring a suit to enforce a non-disparagement provision if the specific disparaging statements needed to be filed publicly. Yet plaintiffs do not support this contention with, for example, breach-of-non-disparagement-provision cases where courts sealed the specifics of breaching statements. And to argue that plaintiffs would have no incentive to file such cases ignores that plaintiffs are, in many of those cases (including this one), seeking monetary damages. After all, once confidentiality is breached, damages—as opposed to an injunction aimed at staunching the flow of information—may be plaintiffs' best hope, particularly in the internet age.

Still, plaintiffs are in a bit of a dilemma: defendants argued in their motion to dismiss that plaintiffs' complaint did not contain specific-enough allegations, but plaintiffs brought this suit in part to prevent further dissemination of the specific disparaging statements. Unfortunately for plaintiffs, that is precisely the dilemma faced by all plaintiffs seeking to enforce non-disparagement provisions, and it is similar to the dilemma faced by plaintiffs in defamation cases, who often end up publicizing defamatory statements much more than if they had not filed a lawsuit. See, e.g., Bill Mordan, The Streisand Effect, ACC Docket, June 2008, at 96

(explaining the phenomenon). Plaintiffs view their privacy interests as represented by the existence of the non-disparagement provision: it shows that they have a vested interest in the non-disclosure of the paragraphs they seek to seal. But it is uncertain whether they have privacy interests because of that provision—and whether those interests are threatened by disclosure—because at this stage the Court has not yet assessed whether the agreement is valid, enforceable, and violated by the statements here. Moreover, if plaintiffs' allegations are true, any privacy interests that the plaintiffs have in the more salacious details in the paragraphs at issue have already been diminished by defendants' conduct. Plaintiffs brought this case precisely to redress the damage purportedly done to their privacy interests, knowing that filing the case—and initially filing it on the public record—could run the risk of publicizing the alleged statements even further. Hence, because any risk of incremental harm to plaintiffs' privacy interests posed by disclosure is uncertain, low, and assumed by plaintiffs, this factor weighs in favor of disclosure of both paragraphs at issue.

  **e.  The Low Possibility of Prejudice in Future Litigation**

  Under this factor, courts consider "whether disclosure of the documents will lead to prejudice in future litigation to the party seeking the seal." Friedman 672 F. Supp. 2d at 60. Plaintiffs make a speculative and generalized argument that "[o]ther potential litigants could seek to rely on Defendants' allegations in this case," but they do not explain how or for what purpose future litigants would do so, or even provide any examples. Pls.' Reply in Supp. of Mot. to Amend & Seal [ECF No. 21] 18. Because plaintiffs have not met their burden on this factor, see Zapp, 746 F. Supp. at 150, it weighs in favor of disclosure.

### f.     The Purposes for Which the Documents Were Introduced

The last factor concerns the subject matter of the material sought to be sealed. "The more relevant a pleading is to the central claims of the litigation, the stronger the presumption of unsealing the pleading becomes." Grover, 2013 WL 6037213 at *4 (citing United States ex rel. Durham v. Prospect Waterproofing, Inc., 818 F. Supp. 2d 64, 69 (D.D.C. 2011) (noting that "there is less of a pressing concern to unseal pleadings if they are not relevant to the claims")). This factor weighs against sealing the whole case here, because this factor is focused on whether particular documents should be sealed because they play only an ancillary role in the case. See Hubbard, 650 F.2d at 321 (assessing whether documents introduced solely to demonstrate unlawfulness of search and seizure in criminal case should remain sealed). Plaintiffs included paragraphs 17 and 20, amended to contain more specifics of the alleged statements, for a central purpose: to help defeat defendants' motion to dismiss by providing specifics of the purported breach of the non-disparagement provision. Indeed, plaintiffs can hardly prove that defendants violated the non-disparagement provision without specifically alleging that defendants disparaged plaintiffs. And, as discussed above, the specifics of the alleged statements will play a central role during each stage of the litigation, from the motion to dismiss to summary judgment to trial. This central role, then, weighs heavily against sealing the paragraphs at issue.

Plaintiffs argue that United States v. Hubbard, 650 F.2d 293 (D.C. Cir. 1980), supports their position, but it does not. In Hubbard, the D.C. Circuit found that certain documents introduced solely to demonstrate the unlawfulness under the Fourth Amendment of a search and seizure should remain under seal. Id. at 321. The court relied on the "fundamental thrust" of the Fourth Amendment: "the protection of privacy and property interests," and noted that "it would be ironic indeed if one who contests the lawfulness of a search and seizure were always required

to acquiesce in a substantial invasion of those interests simply to vindicate them." <u>Id.</u> At first, it seems as if this principle is transportable to this case: would it not "be ironic indeed if one who [asserts a breach of a non-disparagement provision is] always required to acquiesce in a substantial invasion of th[e] interests [protected by the non-disparagement provision] simply to vindicate them"? Closer examination, however, reveals that this principle is not so transportable. In <u>Hubbard</u>, the court was vindicating the defendant's Fourth Amendment rights. Here, plaintiffs ask the Court to vindicate their <u>contractual</u> interests, not their privacy interests: they are really asking this Court to enforce a contract, not to vindicate their privacy rights. The Court does not require plaintiffs to acquiesce to a substantial invasion of their <u>contractual</u> interests in order to vindicate them, and so <u>Hubbard</u> is distinguishable. Simply put, to enforce the contract here, the Court must analyze whether it was breached, and that analysis is normally a public matter. <u>See</u> <u>Nat'l Children's Ctr. Inc.</u>, 98 F.3d at 1409 (noting the "strong presumption in favor of public access to judicial proceedings"). The purpose for which plaintiffs included the specifics of the alleged contract breach is central to their case, and disclosure does not frustrate the purpose for which they are introducing them—to enforce the contract. This factor therefore weighs in favor of disclosure.

Based on its consideration of all the <u>Hubbard</u> factors, the Court determines that plaintiffs have not met their burden to show that either the entire case or the material in paragraphs 17 and 20 of their amended complaint should remain under seal. Hence, the Court will deny plaintiffs' motion to seal.

## III.    PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

Plaintiffs also move for expedited discovery so they can make a record to support their pending motion for a preliminary injunction. <u>See</u> Pls.' Mot. for Expedited Disc. Under Federal

Civil Rule 26(d)(1), unless this Court orders otherwise, plaintiffs may not seek discovery from defendants (or any other source) until the parties have had their Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1). Rule 26 does not, however, lay out a standard to apply when determining whether expedited discovery is appropriate. But expedited discovery is not the norm, particularly where defendants have filed a motion to dismiss. Lacking authoritative guidance, courts in this district have assessed motions for expedited discovery under two different standards, the Notaro approach and the "reasonableness" approach. See, e.g., Landwehr v. FDIC, 282 F.R.D. 1, 3-4 (D.D.C. 2010); Disability Rights Council of Greater Washington v. WMATA, 234 F.R.D. 4, 6-7 (D.D.C. 2006); In re Fannie Mae Deriv. Litig., 227 F.R.D. 142, 142-43 (D.D.C. 2005); Humane Society of U.S. v. Amazon.com, Inc., No. 07-623, 2007 WL 1297170, at *2-3 (D.D.C. 2007).

Under the first approach, initially spelled out in Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y. 1982),[3] a moving party must demonstrate the following in order to obtain expedited discovery:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

But as Magistrate Judge Facciola noted in Disability Rights Council, "[m]ore recent cases have rejected the Notaro test in favor of a reasonableness test, particularly in cases where the expedited discovery is related to a motion for a preliminary injunction." 234 F.R.D. at 6 (citing Dimension Data N. Am., Inc. v. NetStar-1, Inc., 226 F.R.D. 528, 531 (E.D.N.C. 2005); Ayyash v. Bank Al-Madina, 233 F.R.D. 325 (S.D.N.Y. 2005); Qwest Communic'ns Int'l, Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419-20 (D. Colo. 2003)). This trend results from the

---

[3] Although Rule 26 was amended in 1993, well after Notaro was decided, courts in this district continue to use this test, usually in conjunction with the reasonableness standard. See In re Fannie Mae, 227 F.R.D. at 142.

Notaro standard's overlap with the preliminary injunction standard. See, e.g., Def.'s Opp'n at 4 (arguing that, under Notaro, plaintiffs "have failed to show any irreparable injury and any substantial likelihood on the merits of [their] case . . . [f]or the reasons set forth in [defendants' opposition to plaintiffs' motion for preliminary injunction]"). Indeed, when a plaintiff requests expedited discovery for the purpose of fleshing out a preliminary injunction motion, "it does not make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request." Merrill Lynch, Pierce, Fenner & Smith v. O'Connor, 194 F.R.D. 618, 624 (N.D. Ill. 2000); see Ayyash, 233 F.R.D. at 327. This Court agrees with those courts that have rejected the Notaro standard in favor of the reasonableness approach, an approach more suited to the application of the Court's broad discretion in handling discovery. See Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 743 (7th Cir. 1985) (noting that district courts have broad discretion to supervise the discovery process).

Moreover, if plaintiffs cannot prevail under the reasonableness approach, the Court need not decide whether they could meet the Notaro approach, because the reasonableness approach is a more liberal standard. Under the reasonableness approach, the Court considers the "reasonableness of the request in light of all of the surrounding circumstances," In re Fannie Mae, 227 F.R.D. at 142-43, which include: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." Id. These factors, however, are only guidelines for the exercise of the Court's discretion.

The Court first examines the scope of the proposed discovery to assess whether it is reasonable. As defendants point out here, plaintiffs seek relatively broad discovery on issues

going to the merits of their case—their discovery requests are not narrowly tailored to reveal information related to the preliminary injunction as opposed to the case as a whole. See Dimension Data, 226 F.R.D. at 532. Plaintiffs effectively concede as much by characterizing their deposition requests as seeking information only on "whether Defendants breached the Non-Disparagement provision of the Agreement." Pls.' Reply in Supp. of Mot. for Expedited Disc. [ECF No. 19] 3. That, however, is the central issue in this case: proving a breach would substantially advance plaintiffs' claim on the merits.

Besides requesting depositions that would go to the heart of this case, plaintiffs want defendants to produce documents that would help to prove the extent of damages, if any, to which plaintiffs would be entitled if they prevailed on the merits. See Pl.'s Mot. for Expedited Disc. at 5 (stating that the documents sought will "determine the amount of diversion of referrals from Dr. Guttenberg to Defendants"—a damages issue whether or not plaintiffs characterize it as such). Plaintiffs seek: all documents "identify[ing] Healthcare Providers who have referred Matters to [defendants] between July 1, 2012 to the present," all documents "sent by [defendants] to referring doctors or dentist[s], and received from them from July 1, 2012 to the present," and all documents "that refer, relate, or regard the Plaintiffs." Id. Ex. 1 [ECF No. 7-3] 4. The Court notes that the contents of these documents would likely weigh against a finding of irreparable harm in the preliminary injunction analysis. Putting numbers on lost referrals and on the extent of defendants' purported disparagement tends to increase the certainty to which damages can be ascertained. Hence, the document requests are not narrowly tailored to seek information that would show plaintiffs' entitlement to a preliminary injunction.

Plaintiffs' demonstrated lack of urgency in seeking expedited discovery also weighs against granting their request. Plaintiffs filed this case back in November in D.C. Superior Court,

where they did not seek expedited discovery. See Notice of Removal. Then, after defendants removed the case to this Court, plaintiffs still did not seek expedited discovery. It was only three weeks after defendants filed their motion to dismiss that plaintiffs filed their expedited discovery motion. This is particularly problematic because plaintiffs also seek injunctive relief in their complaint: after defendants argued in their motion to dismiss that the allegations in the complaint do not support granting injunctive relief, plaintiffs requested expedited discovery on information going to the core issues in the case. It is at least plausible that plaintiffs seek expedited discovery not to bolster the viability of their preliminary injunction motion but instead to fend off a renewed motion to dismiss.

Indeed, most important for the Court's reasonableness analysis is the pendency of defendants' motion to dismiss. This means that plaintiffs' request for expedited discovery comes "well in advance of typical discovery." Landwehr, 282 F.R.D. at 4 (finding motion for expedited discovery filed just after motion-to-dismiss briefing concluded to be premature). It also means that requiring defendants (who have raised several arguments as to why plaintiffs' complaint should be dismissed) to expend significant resources in responding to plaintiffs' discovery requests would be unjust—even more so because plaintiffs' discovery requests go to the merits of the dispute. For example, if the Court were to grant plaintiffs' discovery motion, and then grant defendants' motion to dismiss for failure to state a claim, defendants would have been forced to expend significant resources responding to discovery requests in a case where plaintiffs did not have a viable cause of action. See Twombly, 550 U.S. at 558 ("So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" (citing 5 C. Wright &  A. Miller, Fed. Prac. & Proc. § 1216, 233-34 (3d

ed. 2004)) (internal quotations omitted). And in this case, defendants have already been forced to expend resources responding to the numerous motions filed by plaintiffs. At the very least, reasonableness dictates that the Court consider defendants' motion to dismiss before requiring extensive and expensive discovery. Hence, for all the reasons explained above, the Court finds that it would be unreasonable to grant plaintiffs' motion for expedited discovery.[4]

## IV.    PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

The standard for issuance of the "extraordinary and drastic remedy" of a preliminary injunction is by now well-established. Munaf v. Geren, 553 U.S. 674, 689 (2008). To prevail, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) that the moving party would suffer irreparable injury if the injunction were not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction. See Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006) (citing Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998)); see also Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008). But while the standard itself is well-established, its application is not as clear.

Before 2008, it was relatively settled in this circuit that this test was something of a sliding scale, rather than four independent factors that needed to be met. See, e.g., Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985) ("The test is a flexible one [and] [i]njunctive relief may be granted with either a high likelihood of success and some injury, or vice versa."); WMATC v. Holiday Tours, 559 F.2d 841, 843-44 (D.C. Cir. 1977). But the Supreme Court's decision in Winter v. NRDC, Inc., 555 U.S. 7, 20 (2008), unsettled that understanding. There, the Court held that a plaintiff seeking preliminary relief must "demonstrate

---

[4] Plaintiffs also request a status conference to discuss the proposed expedited discovery. Because the Court resolves the issue on the papers, the Court will deny plaintiffs' request for a status conference as well.

that irreparable injury is <u>likely</u> in the absence of an injunction." <u>Winter</u>, 555 U.S. at 22 (characterizing injunctive relief as "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). In doing so, the Court rejected the notion that "when a plaintiff demonstrates a strong likelihood of prevailing on the merits," a court could enter an injunction based on a lesser showing of the "possibility" of irreparable harm. <u>Id.</u> at 21. Broadly read, the Supreme Court thus concluded that a strong showing on one factor could not "balance out" a weak showing on another. That same year, in the context of the closely analogous four-factor test for the issuance of a stay, Justice Kennedy explained that "[w]hen considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other." <u>Nken v. Holder</u>, 556 U.S. 418, 438 (2009) (Kennedy, J., concurring). <u>But see</u> <u>Winter</u>, 555 U.S. at 51 (Ginsburg, J., dissenting) ("[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. This Court has never rejected that formulation, and I do not believe it does so today.") (citation omitted).

The D.C. Circuit has noted this issue, but it has not yet decided whether the sliding-scale analysis made it through the <u>Winter</u>. <u>See</u> <u>Sherley v. Sebelius</u>, 644 F.3d 388, 392 (D.C. Cir. 2011) (declining to decide the issue because plaintiff could not even meet less demanding sliding-scale analysis); <u>Davis v. Pension Ben. Guar. Corp.</u>, 571 F.3d 1288, 1292 (D.C. Cir. 2009) (noting that <u>Winter</u> "could be read to create a more demanding burden"); <u>see also</u> <u>Aamer v. Obama</u>, No. 13-5223, 2014 WL 519238 (D.C. Cir. Feb. 11, 2014) (noting that "it remains an open question whether the 'likelihood of success' factor is 'an independent, free-standing requirement'"). Still, at least two D.C. Circuit judges read <u>Winter</u> and other Supreme Court precedents to require a

plaintiff to "meet four independent requirements," including "both a likelihood of success and a likelihood of irreparable harm." Davis, 571 F.3d at 1296 (Kavanaugh and Henderson, J.J., concurring); see also Gordon v. Holder, 721 F.3d 638, 659 (D.C. Cir. 2013) (Kavanaugh, J., concurring).[5]

Whether or not Winter spelled the end of sliding-scale analysis, one thing is clear: plaintiffs here must at least "demonstrate that irreparable injury is likely in the absence of an injunction." 555 U.S. at 22. Under Winter, even a "strong likelihood of prevailing on the merits" cannot make up for a deficient showing of irreparable injury. Id. at 21-22; Chaplaincy, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."); see also CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995) ("[b]ecause CityFed has made no showing of irreparable injury here, that alone is sufficient for us to conclude that the district court did not abuse its discretion by rejecting CityFed's request [for a preliminary injunction]"); Brown v. District of Columbia, 888 F. Supp. 2d 28, 31 (D.D.C. 2012) (denying preliminary injunction after considering only irreparable harm factor); Cornish v. Dudas, 540 F. Supp. 2d 61, 64 (D.D.C. 2008) ("[w]here a party has made no showing of irreparable injury, injunctive relief may be unavailable regardless of the showings on the other factors"). Because the Court finds that plaintiffs have failed to show any irreparable

---

[5] Even a narrow reading of the Court's holding in Winter supports the view that sliding-scale analysis is obsolete. The Court held, at minimum, that a strong showing on the likelihood-of-success factor—the most important factor, according to the D.C. Circuit, see Aamer, 2014 WL 519238 at *13—could not make up for a weak showing on the irreparable-injury factor. Winter, 555 U.S. at 22. Moreover, these two factors "are the most critical." Nken, 556 U.S. at 434. If, under Winter, a plaintiff must truly clear a certain bar—likelihood of irreparable injury—then a strong showing on the other two (less critical) factors could no more bolster a weak showing of irreparable injury than could a strong showing on the likelihood-of-success factor. Of course, under a narrow reading of Winter, it is conceivable that an especially strong showing on the irreparable-injury factor could make up for weak showings on the other factors (particularly the two less critical factors). But it seems unlikely that the Court in Winter intended the irreparable-injury factor to act as a one-way ratchet on the sliding scale. More likely is that the factors must be independently met.

harm, they are not entitled to a preliminary injunction, and in the interest of judicial efficiency the Court need not address the other three factors.

The Court first disposes of plaintiffs' argument that because the non-disparagement provision explicitly contemplates that an injunction may issue if the provision is breached, a preliminary injunction should issue. Parties may agree beforehand that injunctive relief should issue in certain circumstances—though the parties certainly disagree now that it is warranted here—but such agreements are not binding on a court. Rather, this Court must look to the standard guiding the issuance of a preliminary injunction. Smith, Bucklin & Assoc., Inc. v. Sonntag, 83 F.3d 476, 481 (D.C. Cir. 1996) ("Although there is a contractual provision that states that the company has suffered irreparable harm if the employee breaches the covenant and that the employee agrees to be preliminarily enjoined, this by itself is an insufficient prop." (citing Ellis v. James V. Hurson Assoc., Inc., 565 A.2d 615, 619 n.14 (D.C. 1989)). Hence, the Court turns to analysis of the irreparable harm factor.

To begin with, plaintiffs bear the burden of showing irreparable harm. Sea Containers, 890 F.2d at 1210-11. They must show that "[t]he injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (citations, brackets, and internal quotation marks omitted); Chaplaincy, 454 F.3d at 297-98; Dorsey v. District of Columbia, 711 F. Supp. 2d 133, 135 (D.D.C. 2010) (movant must "make a clear showing that irreparable injury is likely in the absence of an injunction"); Carabillo v. Ullico Inc., 198 F. App'x 1, 2 (D.C. Cir. 2006) (citing Nat'l Wildlife Fed'n v. Burford, 835 F.2d 305, 325 (D.C. Cir. 1987)); see also Amoco Prod. Co. v. Village of Gambell, Alaska, 480 U.S. 531, 545 (1987)). The injury "must be both certain and great; it must be actual and not theoretical . . . [b]are allegations of what is likely

to occur are of no value." <u>Wisc. Gas Co.</u>, 758 F.2d at 674. In other words, plaintiffs cannot

simply make "broad conclusory statements" about the likelihood of harm. <u>Cornish</u>, 540 F. Supp.

2d at 65. Instead, they must "submit[ ] . . . competent evidence into the record . . . that would

permit the Court to assess whether [they], in fact, face[] irreparable harm to [their] professional

li[v]e[s] if an injunction is not issued." <u>Id.</u>

Plaintiffs must also show that the injury is "beyond remediation." <u>Chaplaincy</u>, 454 F.3d

at 297-98. As the D.C. Circuit has explained,

> The key word in this consideration is irreparable. Mere injuries, however
> substantial, in terms of money, time and energy necessarily expended in the
> absence of a stay are not enough. The possibility that adequate compensatory or
> other corrective relief will be available at a later date, in the ordinary course of
> litigation weighs heavily against a claim of irreparable harm.

<u>Wis. Gas Co.</u>, 758 F.2d at 674 (quoting <u>Va. Petroleum Jobbers Ass'n v. FPC</u>, 259 F.2d 921, 925

(D.C. Cir. 1958)) (internal quotation marks omitted). Put differently, "the law of this Circuit is

clear that economic loss, in and of itself, does not constitute irreparable harm." <u>Id.</u> "Recoverable

monetary loss may constitute irreparable harm only where the loss threatens the very existence of

the movant's business." <u>Id.</u> (citing <u>Holiday Tours, Inc.</u>, 559 F.2d at 843 n.2); <u>Taylor v.</u>

<u>Resolution Trust Corp.</u>, 56 F.3d 1497, 1507 (D.C. Cir. 1995) ("recoverable economic losses are

not considered irreparable"); <u>Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.</u>, 933 F. Supp. 2d

58, 80 (D.D.C. 2013) (same); <u>Fanning v. High Mountain Inspection Servs., Inc.</u>, 520 F. Supp. 2d

55, 59 (D.D.C. 2007) (claimed losses were "merely financial, and thus, not irreparable").

Plaintiffs allege that as a result of the purported breach of the non-disparagement

provision, they "have been damaged and are entitled to compensatory damages . . . in the amount

of [$250,000]." Pls.' Mot. to Amend & Seal Ex. 1 [ECF No. 11] ("Amended Compl.") ¶¶24, 26.

Under a separate cause of action (rather than their prayer for relief) entitled "Injunctive Relief,"

plaintiffs allege conclusorily that "[d]efendants' conduct has caused and continues to cause irreparable harm" to plaintiffs. Id. ¶¶ 27-29. Plaintiffs also allege that defendants' conduct has "harmed Plaintiffs['] reputation, trade, business and profession and resulted in the loss of patients," id. ¶ 32; that defendants "knew they were interfering with Plaintiffs' business expectancy," id. ¶ 38; and that the "decline in referrals to Plaintiffs have [sic] damaged Plaintiffs['] reputation and caused economic harm," id. ¶ 39. Each of these allegations speaks of economic harm to plaintiffs' business. But this does not qualify as irreparable harm, as it is plainly compensable. And plaintiffs do not show or even allege that the economic loss "threatens the very existence of [their] business," Wis. Gas Co., 758 F.2d at 674; instead, they argue that because their business is based on referrals, lost referrals threatens their practice. Perhaps so, but plaintiffs do not allege that the amount of referrals lost is so large as to threaten the existence of the business. And plaintiffs undercut their claim of irreparable harm by estimating the amount of compensatory damages to which they are entitled because of the breach, and then seeking expedited discovery of information that would help to prove the amount of monetary damages.

As for injury to reputation, that chicken has already flown the coop. If plaintiffs' allegations are true, defendants have already disparaged Dr. Guttenberg, and plaintiffs themselves have repeated the alleged disparaging statements in their complaint. Indeed, they seek damages for the purported harm to reputation. See Amended Compl. ¶¶ 32, 39. Any adverse effects on Dr. Guttenberg's professional life (lost referral sources leading to lost revenues, for example) can be redressed through monetary compensation—if he is entitled to any—and hence the harm is by definition not irreparable. Likewise for any harm to his personal reputation: if that constituted irreparable harm, not compensable through monetary damages, defamation plaintiffs would regularly obtain preliminary injunctions against their defamers rather than seek monetary

damages. See Sampson, 415 U.S. at 91-92 ("Assuming for the purpose of discussion that respondent had . . . supported the claim that her reputation would be damaged as a result of the challenged agency action, we think the showing falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction . . . .").

Plaintiffs' delay in requesting a preliminary injunction also weighs against a finding of irreparable harm here. See Jack's Canoes, 933 F. Supp. 2d at 81 ("Plaintiff's delay and its decision not to apply for the [agency action] undermine any argument that its injury is of 'such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'") (internal citations and quotation marks omitted). Plaintiffs did not ask for a preliminary injunction in November 2013 when they originally filed this suit, nor did they ask for one after defendants removed it to this Court. Only after defendants filed their motion to dismiss did plaintiffs communicate any urgency in enjoining defendants (recall that plaintiffs also request injunctive relief in their complaint), and that urgency is not justified by any new facts or allegations. For all these reasons, the Court finds that plaintiffs fall well short of carrying their burden to show that, in the absence of an injunction, they would suffer irreparable harm.

## CONCLUSION

For the foregoing reasons, the Court will grant plaintiffs' motion to amend their complaint, deny plaintiffs' motion to seal the case or, in the alternative, to seal certain portions of the record, deny plaintiffs' motion for expedited discovery, and deny plaintiffs' motion for a preliminary injunction. A separate order has issued this date.


                                              /s/
                                    _____
                                        JOHN D. BATES
                                    United States District Judge

Dated:  March 19, 2014