UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. STEVEN A. GUTTENBERG, et al.,

    Plaintiffs,

    v.

DR. ROBERT W. EMERY, et al.,

    Defendants.

Civil Action No. 13-2046 (JDB)

## MEMORANDUM OPINION

This case involves a dispute over alleged breaches of a non-disparagement provision in a settlement agreement between two former business partners. Currently before the Court is [3] defendants' motion to dismiss and [3] defendants' motion for attorney's fees. For the reasons described below, the Court will grant in part and deny in part defendants' motion to dismiss, and will deny defendants' motion for attorney's fees without prejudice.

## BACKGROUND

Dr. Guttenberg and Dr. Emery were joint shareholders of an oral surgery practice for about twenty years before their relationship soured. Defs.' Mem. in Supp. of Mot. to Dismiss [ECF No. 3-1] ("Defs.' Mot.") at 1. Dr. Guttenberg filed a lawsuit against Dr. Emery back in 2008 over some issues that arose during the fallout of their professional relationship, but the parties quickly settled that case. Id. The settlement agreement entered into by Drs. Guttenberg and Emery (the "2008 Settlement Agreement") contained, among other things, a non-disparagement provision. Id. at 2. That provision, and the alleged breach of that provision, is primarily what this case is about. Plaintiffs, Dr. Guttenberg and his professional corporation, allege that purported violations of the non-disparagement provision by defendants, Dr. Emery

1

and his wife Kathy Borg-Emery, are causing them to lose referral sources and thus prospective clients. See Pls.' Am. Compl. [ECF No. 24] ("Compl.") ¶¶ 18-20. Plaintiffs also allege that defendants violated the Virginia Business Conspiracy Statute, Virginia State Code Section 18.2-499, and that defendants tortiously interfered with plaintiffs' economic advantage, all through an alleged campaign of disparagement. See id. ¶¶ 30-39.

Plaintiffs initially filed this case in D.C. Superior Court in November 2013, and defendants removed it to this Court in late December 2013. Notice of Removal [ECF No. 1] ("Notice of Removal"). A week later, defendants filed a motion to dismiss. See Defs.' Mot. to Dismiss [ECF No. 3]. Plaintiffs opposed that motion and filed a motion to amend their complaint, which the Court granted. See Mar. 19, 2014 Mem. Op. [ECF No. 22]; Mar. 19, 2014 Order [ECF No. 23]. Some additional briefing ensued, fleshing out previously made arguments or addressing plaintiffs' amended complaint, saving defendants' the trouble of filing a renewed motion to dismiss. See Defs.' Reply in Supp. of Mot. to Dismiss [ECF No. 25]. In their motion, defendants argue that this Court lacks personal jurisdiction over defendant Kathy Borg-Emery and that plaintiffs' complaint fails to state a claim upon which relief may be granted against either defendant. See Defs.' Mot. at 4. Defendants also request attorney's fees. Id.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing a court's personal jurisdiction over a defendant. Where, as here, no jurisdictional discovery has taken place, plaintiffs need only make a prima facie showing of the pertinent jurisdictional facts to meet that burden. See Mwani v. bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005); Brunson v. Kalil & Co., Inc., 404 F. Supp. 2d 221, 226 (D.D.C. 2005). "Moreover, to establish a prima facie case, plaintiffs are not limited to evidence that meets the standards of admissibility required by the district court. Rather, they may rest their argument on their pleadings, bolstered

2

by such affidavits and other written materials as they can otherwise obtain." Mwani, 417 F.3d at 7. Nevertheless, a plaintiff must allege "specific facts upon which personal jurisdiction may be based," Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998), and cannot rely on conclusory allegations, see Elemary v. Phillipp Holzmann AG, 533 F. Supp. 2d 116, 121 (D.D.C. 2008).

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" such that the defendant has "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must supply "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to provide the "grounds" of "entitle[ment] to relief." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Twombly, 550 U.S. at 570); see also Atherton v. Dist. of Columbia Office of the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009). A complaint is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. This amounts to a "two-pronged approach," under which a court first identifies the factual allegations that are entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 679.

"[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Leatherman v. Tarrant Cnty. Narcotics Intel. & Coord. Unit, 507 U.S. 163, 164 (1993). Therefore, the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that reasonably may be drawn from the allegations of fact. See Scheuer, 416 U.S. at 236; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). The Court need not, however, accept as true "a legal conclusion couched as a factual allegation," nor inferences that are unsupported by the facts set out in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan, 478 U.S. at 286).

## DISCUSSION

Personal jurisdiction, like subject-matter jurisdiction, "is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication,'" so the Court will address it first. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999) (quoting Emp'rs Reins. Corp. v. Bryant, 299 U.S. 374, 382 (1937)). Then, defendants' arguments as to each claim will be assessed.

### I. PERSONAL JURISDICTION

Defendants contend that this Court may not exercise jurisdiction over Kathy Borg-Emery, who resides in Virginia. The Court may exercise personal jurisdiction over a non-resident defendant either by (1) finding general jurisdiction over the defendant, thereby allowing the court to entertain a suit against a defendant "without regard to the claim's relationship vel non to the defendant's forum-linked activity," or (2) finding specific jurisdiction based on "acts of a defendant that touch and concern the forum." Steinberg v. Int'l Criminal Police Org., 672 F.2d 927, 928 (D.C. Cir. 1981); accord Kopff v. Battaglia, 425 F. Supp. 2d 76, 81 (D.D.C. 2006).

Here, it is not necessary to inquire whether this Court could exercise general jurisdiction over Borg-Emery because the Court may exercise specific jurisdiction over her. "A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citing United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995)). Only one provision of D.C.'s long-arm statute dealing with specific jurisdiction is potentially applicable here: D.C. Code § 13-423(a)(4) provides that

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's:
> …
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.[1]

This provision, unlike other provisions in D.C.'s long-arm statute, does not "reach as far as due process permits." Mwani, 417 F.3d at 9. Put otherwise, if plaintiffs can show that Borg-Emery has the requisite contacts with the District of Columbia, the Court need not engage in the normal due process inquiry, because it is already satisfied: "the Due Process Clause does not demand the level of contacts required by that provision." Id.; see also Etchebarne-Bourdin v. Radice, 982 A.2d 752, 762 (D.C. 2009) ("[T]he additional activities listed in subsection (a)(4) are 'plus factors' intended to ensure that there are minimum contacts with the forum sufficient to satisfy due process concerns.").

---

[1] Section 13-423(b) also contains a limiting "nexus requirement," providing that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." Id. But once plaintiffs show that section (a)(4) is met, they need not connect Borg-Emery's actions with the "plus factors" contained in section (a)(4), for the "nexus requirement is subsumed in the requirement that the 'claim for relief aris[e]' from an act or omission outside the forum that 'caus[es] tortious injury in the District of Columbia.'" Etchebarne-Bourdin v. Radice, 982 A.2d 752, 762 (D.C. 2009). In other words, unlike the analysis under other provisions in section 13-423(a), once section (a)(4) is satisfied, so is section (b).

5

For purposes of personal jurisdiction, plaintiffs have sufficiently alleged that they have suffered a tortious injury to their business in the District of Columbia.[2] See Compl. ¶¶ 20, 29, 31, 32, 39 (alleging various injuries). They have also sufficiently alleged that their injury was caused by Borg-Emery's actions: disseminating the purported statements in Virginia. See id. ¶¶ 17, 18, 20, 32 (alleging that various injuries were caused by the purported statements). The relevant question, then, is whether Borg-Emery "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4). These "plus factors," "serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." Crane v. Carr, 814 F.2d 758, 763 (D.C. Cir. 1987); see also Charlton v. Mond, 987 A.2d 436, 441 (D.C. 2010) (citing Crane with approval).

Plaintiffs allege that Borg-Emery serves as the comptroller for Emery's dental practice, and that she maintains her office in the District of Columbia. Compl. ¶ 5. They also allege that Borg-Emery, along with Emery, has "engaged in an intentional scheme to disparage Guttenberg in order to divert members of the Washington D.C. metropolitan area's dental and medical communities from referring patients to Guttenberg, and instead have Guttenberg's referral network refer patients to Emery." Id. ¶ 20. In response, defendants argue—with the support of an affidavit from Borg-Emery—that she works "solely and exclusively out of [her] home office in McLean, Virginia," and that she does not maintain any office in the District of Columbia. Defs.' Mot. Ex. A [ECF No. 3-2] ¶ 4. Moreover, she avers that she does not own any business or transact any business in D.C., and that she travels to D.C. "only sporadically for social reasons or

---

[2] This is not true, as is discussed below, with respect to pleading tortious interference with economic advantage.

6

other miscellaneous appointments, such as doctors' appointments." Id. ¶ 7. Yet she does not dispute that she is the comptroller for her husband's oral surgery practice in the District of Columbia. As plaintiffs point out, her husband renders services in D.C., and through her position as an employee of that practice, she "derives substantial revenue" from those services. See D.C. Code § 13-423(a)(4).

In a case like this, where no jurisdictional discovery has taken place, plaintiffs have met their burden to make a prima facie showing that Borg-Emery, through an act or omission outside of D.C., caused plaintiffs a tortious injury in D.C., and that she derives substantial revenue from services rendered in D.C. See Mwani, 417 F.3d at 9; D.C. Code § 13-423(a)(4). On the whole, Borg-Emery cannot be said to have "no, or scant, affiliations with" the District of Columbia. See Crane, 814 F.2d at 763. Not only does she regularly travel into D.C. for social and medical reasons, but she is also employed by her husband's oral surgery practice, which is located in the District of Columbia. Further, plaintiffs have alleged that Borg-Emery has engaged in a conspiracy to harm plaintiffs' D.C. business to (in part) benefit Emery's D.C. practice, which presumably would benefit Borg-Emery as well. Compl. ¶ 20. Hence, this Court may exercise specific jurisdiction over Borg-Emery under section 13-423(a)(4), and defendants' motion to dismiss for lack of personal jurisdiction will be denied.

## II. BREACH OF CONTRACT CLAIM

### a. Defendant Kathy Borg-Emery

Defendants' argument that this Court should dismiss the breach of contract claim against Borg-Emery is simple: Borg-Emery is not a party to the contract at issue, so she cannot be held liable for breach. Plaintiffs do not dispute that Borg-Emery is neither a signatory nor a party to the 2008 Settlement Agreement, yet they claim that she breached the Agreement when she

7

allegedly made disparaging remarks in contravention of the non-disparagement clause. "It goes without saying that a contract cannot bind a nonparty," but plaintiffs apparently need this Court to say so. EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002); see also Charlton v. Mond, 987 A.2d 436, 441 (D.C. 2010) (granting summary judgment for nonparty because "[n]on-parties owe no contractual duty to the contracting parties."); Jones v. Quintana, 872 F. Supp. 2d 48, 58 (D.D.C. 2012) ("It is a fundamental and unobjectionable principle that a contract cannot bind a non-party—i.e., someone who has not assented to be bound to its terms." (citing Waffle House, 534 U.S. at 294)). Hence, defendants are correct: Borg-Emery had no duties under a contract to which she was not a party, so she cannot be liable for any breach.

The authorities cited by plaintiffs in response are distinguishable, unpersuasive, and not controlling. Plaintiffs contend that Brantley v. Republic Mortg. Ins. Co., 424 F.3d 392, 396 (4th Cir. 2005), supports their argument, but it does not. That case notes only that in some instances, an intended third-party beneficiary of an arbitration agreement may be able to compel arbitration against a party to that agreement. Id. But plaintiffs do not argue that Borg-Emery is an intended beneficiary of the 2008 Settlement Agreement; moreover, plaintiffs are seeking to enforce the contract against the non-party (Borg-Emery), not the other way around as in Brantley. See Jones v. Quintana, 872 F. Supp. 2d 48, 58 (D.D.C. 2012) (citing Restatement (Second) of Contracts §§ 304, 309 (1981)) (even if plaintiff were intended beneficiary, that would only entitle non-party plaintiff to enforce agreement, not vice versa).

Plaintiffs also rely heavily on a 1984 case from an intermediate state court, McCart v. H&R Block, Inc., 470 N.E.2d 756, 762 (Ind. Ct. App. 1984). There, the court affirmed an order enjoining a husband from violating a non-compete to which only his wife (and joint business

operator) was a signatory. That case is not controlling here, and it is inconsistent with binding[3] D.C. law, under which non-parties owe no contractual duty to contracting parties.[4] See Charlton, 987 A.2d at 441.

Lastly, plaintiffs argue that because, in their view, Borg-Emery was acting as Emery's agent in making the disparaging remarks—but not, critically, in making the contract—she can be held liable on the contract. This misstates basic agency principles. In certain circumstances, principals may be liable on contracts their agents make on their behalf, but an agent cannot be held liable merely because his principal made a contract and he is her agent—and even where agents actually make contracts on behalf of their principals, they can be held liable only in very limited circumstances. See, e.g., Restatement (Third) of Agency § 6.01 (2006) (agent making contract on behalf of disclosed principal liable only if agent and third party agree that agent is party); id. § 6.02 (discussing agent's liability in unidentified principal situation); id. § 6.03 (agent's liability in undisclosed principal situation) id. § 6.04 (agent's liability in nonexistent principal situation). Even if Borg-Emery was Emery's agent for the purpose of making the disparaging remarks, she was not his agent for the purpose of making the contract, so she cannot

---

[3] See infra Part IV.
[4] Even if McCart were controlling, it is distinguishable. There, the husband and wife jointly operated a business that, if run exclusively by the wife, would have violated her non-compete agreement. 470 N.E.2d at 760. Refusing to "ignor[e] the business realities of the situation," the trial court found that enjoining only the wife would frustrate the non-compete agreement. Id. at 762. The appellate court agreed, noting that husband and wife engaged in "cooperative conduct amount[ing] to mere subterfuge designed to avoid [the wife's] obligation under the contract." Id. The husband-and-wife team "treated the operation as their joint business" (their joint income tax returns indicated that nearly all of their income was from that business) and they "held themselves out to the public that way." Id. Put another way, the plaintiff had produced plenty of evidence that the third-party husband "knowingly participated and aided" his wife in violating her contract. Id. Here, plaintiffs have not alleged any facts that would show Borg-Emery knowingly participated and aided Emery in violating his contract. Plaintiffs include one specific instance of disparagement in their complaint: Borg-Emery's comments in a Virginia waiting room. Compl. ¶ 17. But plaintiffs do not include any facts that show cooperation between Emery and Borg-Emery. In other words, nothing in the complaint—other than plaintiffs' conclusory assertions regarding a joint campaign—indicates that Emery and Borg-Emery engaged in cooperative conduct designed to avoid Emery's obligation under the contract.

be held liable for breaching the contract. Hence, because Borg-Emery is not a party to the 2008 Settlement Agreement, the Court will dismiss plaintiffs' claim that she breached that agreement.

### b. Defendant Robert Emery

Defendants argue that plaintiffs have not pleaded their breach of contract claim against Emery with enough specificity to satisfy Twombly and Iqbal. This is not a frivolous argument, because one of the few allegations plaintiffs make against Emery specifically is that "[o]n information and belief, Emery and Borg-Emery have made other disparaging representations to third parties, including other dental and medical professionals . . . ." Compl. ¶ 20. Simply alleging that a contract provision exists and that a party has violated it, without any more detail, is insufficient under Rule 12(b)(6). See Twombly, 550 U.S. at 555-56 (plaintiffs must supply "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to provide the "grounds" of "entitle[ment] to relief").

But plaintiffs have also included other allegations that allow their complaint to pass muster. They first identified the contract between the parties. Compl. ¶ 14. Next, they identified the specific provision of the contract Emery allegedly violated. Id. ¶ 16. That provision provides that neither party shall, "directly or indirectly . . . make, or cause to be made," any disparaging statement. Id. (emphasis added). Plaintiffs next specifically alleged that Borg-Emery made a disparaging statement. Id. ¶ 17. They included the content of the alleged statement, where it was made, the general identity of the person to whom it was made, and when it was made. Id. If the alleged statement had been made by Emery, not Borg-Emery, its content leaves little doubt that plaintiffs would have a breach of contract claim based on the non-disparagement clause. In addition, plaintiffs allege that Borg-Emery is Emery's agent, and that husband and wife are engaging in a joint campaign to smear plaintiffs. Id. ¶¶ 19, 20. In other words, assuming (as the

Court must at this stage) that plaintiffs' allegations are true, their complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'": if, as plaintiffs allege, Emery indirectly made the alleged statement through his wife and employee, Borg-Emery, or if he caused her to make it, he may have breached the non-disparagement clause. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Hence, defendants' motion to dismiss for failure to state a claim will be denied as to the breach of contract claim against Emery. Whether that claim will survive summary judgment after discovery remains to be seen, but that is the appropriate place for resolution.

### III. INJUNCTIVE RELIEF CLAIM

As defendants correctly point out, Count II of plaintiffs' amended complaint is not a separate cause of action or claim; rather, it is a request that the Court grant a particular form of relief (an injunction) to redress the other claims plaintiffs assert. See Compl. ¶¶ 27-29. For that reason, the Court will dismiss Count II for failure to state a claim against both defendants.[5]

### IV. VIRGINIA BUSINESS CONSPIRACY STATUTE CLAIM

Unlike the Court's analysis of plaintiffs' breach of contract claim, the analysis of whether plaintiffs have adequately pleaded their claim under the Virginia Business Conspiracy Statute[6] is the same for Emery and Borg-Emery. Defendants argue that plaintiffs do not have a cause of action under that statute at all because, in their view, D.C. law, not Virginia law, applies to plaintiffs' tort claims.[7]

This case arises under the Court's diversity jurisdiction, 28 U.S.C. § 1332, but the Rules of Decision Act, 28 U.S.C. § 1652, does not apply to the District of Columbia. Gray v. Am.

---

[5] Plaintiffs do request "[s]uch other relief as the Court deems just and proper," Compl. ¶ 26, so if they prevail they may be entitled to an injunction. The Court dismisses Count II because "injunctive relief" is not a freestanding cause of action.

[6] Virginia State Code Section 18.2-499.

[7] Neither plaintiffs nor defendants dispute that the breach-of-contract claims are governed by D.C. law.

11

Express Co., 743 F.2d 10, 16-17 (D.C. Cir. 1984). Nonetheless, federal courts in this district apply D.C. substantive law and choice-of-law rules for reasons of uniformity and out of respect for the D.C. Court of Appeals. See Anchorage-Hynning & Co. v. Moringiello, 697 F.2d 356, 360-61 (D.C. Cir. 1983); see also Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).

For choice of law, D.C. courts employ a "modified governmental interests" analysis, under which a court "evaluate[s] the governmental policies underlying the applicable laws and determine[s] which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." Hercules & Co. v. Shama Rest. Corp., 566 A.2d 31, 43 (D.C. 1989) (internal quotation marks omitted); see also Moore v. Ronald Hsu Constr. Co., 576 A.2d 734, 737 (D.C. 1990). "When both jurisdictions have an interest in applying their own laws to the facts of the case, 'the forum law will be applied unless the foreign [jurisdiction] has a greater interest in the controversy.'" Burke, 917 A.2d at 1117 (quoting District of Columbia v. Coleman, 667 A.2d 811, 816 (D.C. 1995)). As part of that evaluation, courts consider the factors set out in the Restatement (Second) Conflict of Laws § 145, which apply to tort cases generally:

> (a) the place where the injury occurred;
> (b) the place where the conduct causing the injury occurred;
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties; and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) Conflict of Laws § 145 (1971 & Supp. 2011); see also Drs. Groover, Christie & Merritt, PC v. Burke, 917 A.2d 1110, 1117 (D.C. 2007).

Here, the injury occurred in the District of Columbia. Plaintiffs allege that Borg-Emery made disparaging statements in Virginia, but they contend that the effects of those statements were felt mostly in this district, because defendants purportedly have

> engaged in a systematic and intentional campaign to harm Guttenberg's personal and professional reputations, Guttenberg's practice and interfere with Guttenberg's relationship with his wife. Together Emery and Borg-Emery have engaged in an intentional scheme to disparage Guttenberg in order to divert members of the Washington D.C. metropolitan area's dental and medical communities from referring patients to Guttenberg . . . .

Compl. ¶ 20. In other words, plaintiffs allege harm to their business, which is located and incorporated in this district. Id. ¶ 3. To the extent plaintiffs allege personal harm to Guttenberg, he resides here as well. Id. ¶ 2.

Although plaintiffs' complaint is mostly silent on where other offending conduct took place, plaintiffs specifically allege that some of the offending conduct occurred in Virginia:

> Borg-Emery was in the public waiting room at a veterinary office in Virginia and began talking to a woman who was a dental hygienist in Vienna, Virginia. Defendant Borg-Emery told the hygienist, inter alia, that Dr. Guttenberg was a sexual deviant, [that he] received oral sex under the table at his office and cheated on his wife. She also stated that he had other affairs, including sexual intercourse at the office. These statements were later . . . restated to a dentist in Virginia with professional relations with Plaintiff Guttenberg.

Id. ¶ 17. This factor thus weighs in favor of applying Virginia law.[8]

As for where the parties reside and do business, according to plaintiffs' complaint, Guttenberg practices and resides in the District of Columbia. Id. ¶ 2. The other plaintiff, Guttenberg's professional corporation, is a D.C. corporation. Id. ¶ 3. Emery and Borg-Emery reside in Virginia, Emery's practice (which employs Borg-Emery) is located in the District of Columbia, and Borg-Emery works in Virginia. Id. ¶¶ 4, 5; Defs.' Mot. at 9 (citing Ex. A to Defs.' Mot.). On balance, this factor weighs somewhat in favor of applying D.C. law.

---

[8] Plaintiffs also allege that defendants "have made other disparaging representations to third parties, including other dental and medical professionals, and have engaged in a systematic and intentional campaign to harm Guttenberg's personal and professional reputations, Guttenberg's practice and [to] interfere with Guttenberg's relationship with his wife." Compl. ¶ 20. Yet nothing indicates whether those representations and that "campaign" took place in Virginia or the District of Columbia or both.

13

The last factor, the place where the relationship between the parties is centered, also weighs in favor of applying D.C. law. Originally, the parties' relationship was based on their joint dental practice, located in the District of Columbia. Yet plaintiffs seek to apply Virginia law to address what they view as a conspiracy to divert clients from one D.C. business (Guttenberg's practice) to another D.C. business (Emery's practice). Hence, the parties' relationship is centered in the District of Columbia.

This case, then, involves a D.C. injury resulting from conduct mostly occurring in Virginia; plaintiffs reside and do business in D.C.; defendants reside in Virginia and do business in D.C. (although one defendant works in Virginia); and the relationship between the parties and the two dental practices involved here is centered in D.C. On balance, then, these factors weigh in favor of applying D.C. law. Compare B & H Nat. Place, Inc. v. Beresford, 850 F. Supp. 2d 251, 263 (D.D.C. 2012) (where "essence" of alleged harm occurred in D.C., Virginia Business Conspiracy Statute did not apply even though the defendants included some Virginia entities and residents and some actions occurred in Virginia). And in this case, that rule works no unfairness to plaintiffs, because they chose to pursue their claim in this district. Hence, plaintiffs cannot sue under the Virginia Business Conspiracy Statute, and the Court will dismiss Count III of the complaint.

## V. TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY CLAIM

As with the Virginia Business Conspiracy Statute, the Court's analysis of whether plaintiffs have adequately pleaded tortious interference is the same for both defendants. And as discussed above, D.C. law applies. "To establish a claim for tortious interference with economic advantage under District of Columbia law, the evidence must show: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part

of the interferer, (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy, and (4) resultant damage." Bennett Enters., Inc. v. Domino's Pizza, Inc., 45 F.3d 493, 499 (D.C. Cir. 1995) (citing Genetic Sys. Corp. v. Abbott Labs., 691 F. Supp. 407, 422-23 (D.D.C. 1988)); see also Alfred A. Altimont, Inc. v. Chatelain, Samperton & Nolan, 374 A.2d 284 (D.C. 1977).

As defendants point out, plaintiffs have not alleged the existence of a valid business relationship or expectancy with enough specificity. Plaintiffs allege that "[t]hrough the disparaging comments made by Defendants to individuals in the Metropolitan D.C. medical community, Defendants knew they were interfering with Plaintiffs' business expectancy by causing doctors to terminate their referrals to Plaintiffs and, instead, send those referrals to Defendants" and that "[t]he decline in referrals to Plaintiffs have [sic] damaged Plaintiffs['] reputation and caused economic harm." Compl. ¶¶ 38, 39. The D.C. Circuit recently noted that "the first element of the tort, 'a valid business relationship or expectancy,' appears to require rather specific business opportunities (to be sure, however, not ones necessarily manifested in any contract)." Jankovic v. Int'l Crisis Grp., 593 F.3d 22, 29-30 (D.C. Cir. 2010); see also Xereas v. Heiss, 933 F. Supp. 2d 1, 11 (D.D.C. 2013) ("A claim of tort[i]ous interference with prospective business relations cannot survive where the plaintiff does not allege any specific future business relations or expectancies and only provides general references to potential opportunities.") (citations omitted). As explained in Jankovic, cases where plaintiffs have satisfied this element of the tort involved "specific anticipated transactions" such as specific book deals, specific sources of prospective employment, the development of a specific property, the opportunity to represent a specific client, and so on. 593 F.3d at 29. But here, plaintiffs simply make general allegations of harm to their business, which amount only to the "generic

15

opportunities of any successful enterprise, a type of injury that can be protected by an award of damages in a successful defamation suit." Id. at 29-30 (citing Robert D. Sack, Sack on Defamation, Libel, Slander and Related Problems § 10.5.1 (3d ed. 2009)); see also Xereas, 933 F. Supp. 2d at 11-12 (finding plaintiff failed to state a claim for tortious interference because he only generally alleged that defendants interfered with his "long standing business relationships" and his "ability to maintain contact and relationships, and continue doing business" with "current and prospective customers and industry players"); Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc., 791 F. Supp. 2d 33, 56 (D.D.C. 2011) (stating that the plaintiff must show a "reasonable likelihood" of receiving a contract and "mere speculative contractual expectations or hope are insufficient" to state a claim for tortious interference with prospective business relationships (internal quotation marks omitted)). Plaintiffs proffer no examples of referrals which they would have received but for defendants' conduct. See Jankovic, 593 F.3d at 29. Alleging generally that plaintiffs are losing referrals because of defendants' conduct is simply insufficient under D.C. law, and for that reason alone the Court will dismiss plaintiffs' tortious interference claim.

Because plaintiffs have not identified any specific business opportunities that defendants interfered with—instead only generally alleging that they have suffered some harm to their reputation and business—plaintiffs fail to state a claim for tortious interference with economic advantage under D.C. law. Hence, the Court will dismiss Count IV of the complaint.

## VI. MOTION FOR FEES

Citing provisions in the 2008 Settlement Agreement, defendants also moved for attorney's fees incurred as a result of this litigation. Granting defendants'[9] motion for fees based

---

[9] More precisely, Emery's motion for fees because, as discussed, Borg-Emery is not a party to the Agreement and, thus, she cannot recover fees under it.

on the only provision of the Agreement (the non-disparagement provision) in the record, however, is not warranted. That provision states:

> A breach of this provision, shall be considered a material breach, and the breaching party concedes that . . . the non-prevailing party shall be liable to the prevailing party . . . for the attorneys fees and costs required by the prevailing party to obtain injunctive and/or compensatory relief or to enforce this provision.

Compl. ¶ 16. Because the Court does not now grant defendants' motion to dismiss as against Emery (the only defendant who is a party to the Agreement), no party has prevailed yet, and awarding fees would be premature.[10] Moreover, although defendants contend that other provisions in the Agreement also entitle them to fees, the disparagement provision is the only one in the record; the Agreement itself is not. Thus, the Court cannot determine whether something else in the Agreement would entitle Emery, in a dispute arising out of the Agreement, to fees at this time, although it seems unlikely.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part defendants' motion to dismiss, and will deny defendants' motion for fees without prejudice. The Court will dismiss the entire complaint as against defendant Borg-Emery, dismissing her from the case, and will dismiss all but one of plaintiffs' claims against defendant Emery. A separate order has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: May 16, 2014

---

[10] In addition—subject to the existence of other, broader fee provisions in the Agreement—whether Emery would be entitled to fees under this provision if he prevailed is not clear: on first reading, the provision appears to entitle a prevailing party to fees incurred only "to obtain . . . relief or to enforce this provision." Compl. ¶ 16. In other words, it is not immediately apparent whether Emery—even if he prevails—is incurring attorney's fees "to obtain injunctive and/or compensatory relief or to enforce this provision"; technically, he is incurring fees to defeat plaintiffs' attempt to obtain relief or to enforce the non-disparagement provision. See id.

17