UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. STEVEN A. GUTTENBERG, et al.,

Plaintiffs,

v.

DR. ROBERT W. EMERY, et al.,

Defendants.

Civil Action No. 13-2046 (JDB)

## MEMORANDUM OPINION

Resolving litigation over an earlier dispute, two dentists signed a settlement agreement that included a non-disparagement clause. Despite that agreement, one dentist (and his wife) allegedly bad-mouthed the other, spawning this lawsuit and a flurry of motions, oppositions, and replies. This dentists' quarrel has run its course, however. Now before the Court is [35] plaintiff's motion to voluntarily dismiss his case based on defendant's family emergency. Upon consideration of the parties' filings, the applicable law, and the entire record herein, and for the reasons described below, the Court will grant plaintiff's motion without prejudice.

## BACKGROUND

The facts of this case have been described, at some length, elsewhere. See 3/19/2014 Mem. Op. [ECF No. 22] at 1–2; 5/16/2014 Mem. Op. [ECF No. 27] at 1–2. For present purposes, it suffices to recall that plaintiff Dr. Steven Guttenberg and defendant Dr. Robert Emery were once joint shareholders in an oral surgery practice in the D.C. area. Pl.'s Mem. in Supp. of Mot. for Voluntary Dismissal [ECF No. 35-1] ("Pl.'s Mem.") at 2. When the relationship between the two dentists soured, their professional venture failed, prompting a

separate lawsuit and settlement agreement in 2008.  Id. at 3; see also Ex. A to Sealed Document [ECF No. 41-1] ("Settlement Agreement").[1]

That agreement led to this litigation.  The agreement contained, among other things, a "Non-Disparagement" clause, see Settlement Agreement at 10, which forbade the parties from disparaging each other.  Guttenberg alleges that Emery and his wife, Katherine Borg-Emery, violated this clause.  As Guttenberg tells the story, Emery has been "disparaging him in personal and professional circles" for years, and in 2013 Borg-Emery told a dental hygienist that Guttenberg had frequently engaged in inappropriate sexual relationships with his employees.  Pl.'s Mem. at 3–4.  In response to Guttenberg's complaint, Emery filed a motion to dismiss, which this Court granted in part.  See 5/16/2014 Mem. Op. at 1.  The Court entirely removed Borg-Emery from the case on the ground that she was not a party to the dentists' settlement agreement (and hence was not bound by its non-disparagement clause), and the Court eliminated all but one of Guttenberg's claims against Emery (the breach-of-contract claim based on the non-disparagement clause).  Id. at 7–17.

The case remained in this posture until August 13, 2014.  On that date, Guttenberg filed a motion pursuant to Federal Rule of Civil Procedure 41(a)(2) to voluntarily dismiss his lone remaining claim.  Pl.'s Mot. for Voluntary Dismissal [ECF No. 35] ("Pl.'s Mot.").  His rationale: He had recently learned that Emery's wife had been diagnosed with a serious illness, and Guttenberg consequently "ha[d] no desire to pursue this litigation in which Ms. Borg-Emery would remain a central figure, or to place the additional burden of this litigation on Dr. Emery."  Pl.'s Mot. at 2.  In response, Emery asked the Court not only to dismiss the case, but also to

---

[1] The parties—in response to a Court Order—jointly filed this 2008 Settlement Agreement under seal, because the document includes a confidentiality clause.  Where relevant and necessary to the Court's resolution of the parties' arguments, the Court will occasionally reference and quote portions of this agreement.  But the Court will, of course, take pains to avoid disclosing any information the parties might prefer to keep secret.

require Guttenberg to pay the attorney's fees and costs he had incurred defending against Guttenberg's claims. See Def.'s Resp. to Pl.'s Mot. [ECF No. 37] ("Def.'s Resp.") at 1. Guttenberg replied, see Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. [ECF No. 38] ("Pl.'s Reply"), and Emery asked for leave to file a sur-reply. See Ex. A to Def.'s Mot. for Leave to File Sur-Reply [ECF No. 39-1] ("Def.'s Sur-Reply"). The Court will now grant Emery's sur-reply motion.

## DISCUSSION

**I.   VOLUNTARY DISMISSAL**

Where, as here, the defendant has already answered the plaintiff's complaint, the plaintiff "may"—in the court's discretion—voluntarily dismiss his action "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The courts will typically grant such requests after asking two questions. First, did the plaintiff move for voluntary dismissal in "good faith"? And second, will the defendant "suffer prejudice other than the prospect of a second lawsuit or some tactical disadvantage" based on the dismissal? Conafay v. Wyeth Labs., 793 F.2d 350, 353 (D.C. Cir. 1986).

The Court has no reason to doubt Guttenberg's good faith in this case. As Guttenberg's motion to dismiss explains, he attended a meeting of the District of Columbia's Dental Society Executive Committee on June 30, 2014. That night, he learned that Emery's wife had been diagnosed with a very serious, life-threatening illness. See Pl.'s Mot. at 4. Also that night, and with this news in mind, "Guttenberg called his counsel and informed him to end the case against the Emerys." Id. at 4–5. Courts have found good faith under far less laudable circumstances. See, e.g., Busby v. Capital One, N.A., 841 F. Supp. 2d 49, 55 (D.D.C. 2012) (finding good faith where "plaintiff's motion was filed as a timely reaction to an order . . . which dismissed the

majority of her claims"); Robinson v. England, 216 F.R.D. 17, 18 (D.D.C. 2003) (finding good faith where plaintiff was "unable to find suitable Counsel and continue th[e] action for financial reasons") (internal quotation marks omitted)).

Indeed, Emery only half-heartedly questions Guttenberg's good faith. He implies that Guttenberg's "desire to dismiss the case at this stage is a reaction to the fact that [Guttenberg] lack[s] a good faith basis to hold Dr. Emery liable for breach of contract and . . . [is] unable to articulate any contractual damages despite alleging them." Def.'s Resp. at 4. But Emery is not really questioning Guttenberg's good faith. After all, while—with one breath—he suggests that Guttenberg might have ulterior motives for dismissing his case, Emery also—in the next breath—"agrees that the case should be dismissed" under Rule 41(a)(2) and says that he "does not oppose" Guttenberg's motion. Id. at 1. Because all agree that the Court should grant Guttenberg's motion for voluntary dismissal, the Court finds that Guttenberg (without any real opposition from Emery) has satisfied the good-faith prerequisite for voluntary dismissal.

Moreover, Emery has failed to raise the specter of any "legal prejudice" resulting from a voluntary dismissal. In re Vitamins Antitrust Litig., 198 F.R.D. 296, 304 (D.D.C. 2000). To determine whether a defendant might suffer legal prejudice, the courts weigh several factors, including the extent of the defendant's trial preparation efforts, any excessive delay or lack of diligence on the plaintiff's part, the plaintiff's explanation for the dismissal, and "the stage of litigation at the time the motion to dismiss [was] made." Id. Here, none of these factors point to prejudice. No trial date has been set in this case, and discovery has been stayed pending the resolution of Guttenberg's motion to dismiss, see 8/13/2014 Minute Order, so the case is still in its infancy; Guttenberg has not delayed this case or been less than diligent in pursuing his claims; and the Court has already concluded that Guttenberg's explanation for dismissal is a proper one.

Emery does not challenge any of this. See Def.'s Resp. at 1 ("Dr. Emery agrees that the case should be dismissed, and thus does not oppose [Guttenberg's] Motion in that respect."). The Court will therefore grant Guttenberg's motion for voluntary dismissal.

## II.   ATTORNEY'S FEES

But what "terms," if any, should attach to the Court's dismissal of this case? Fed. R. Civ. P. 41(a)(2) (authorizing the court to dismiss a case "on terms that [it] considers proper"). Emery believes that he is entitled to attorney's fees and costs as a condition of Guttenberg's voluntary dismissal for two reasons. First, he argues that Rule 41(a)(2) demands such an award. And second, he argues that the 2008 Settlement Agreement between the two dentists gives him the right to recover his fees. The Court will reject each argument, in turn.

### a.   Attorney's Fees Under Rule 41(a)(2)

"One of the 'terms' upon which the Court may condition dismissal is the payment of defendant's attorney's fees and costs." Mittakarin v. InfoTran Sys., Inc., 279 F.R.D. 38, 41 (D.D.C. 2012) (citing Taragan v. Eli Lilly & Co., 838 F.2d 1337, 1340 (D.C. Cir. 1988)). But not every voluntarily dismissed case comes with a fees-and-costs condition. Only where these fees and costs "were undertaken unnecessarily" have the courts in this Circuit seen fit to reimburse plaintiffs for their litigation expenses. GAF Corp. v. Transamerica Ins. Co., 665 F.2d 364, 367 (D.C. Cir. 1981) (emphasis added). As one court put it, "in cases in which fees were awarded, 'the scenario [was] the same: the plaintiff, having filed in federal court, discovered that federal jurisdiction could not be maintained and consequently sought a voluntary dismissal in order to pursue its claims in another forum.'" Mittakarin, 279 F.R.D. at 42 (quoting SBM Wageneder Gesellschaft, m.b.H. v. Am. Arbitration Assoc., 113 F.R.D. 659, 662 (D.D.C. 1987)).

This is not that kind of case. Guttenberg has not asked to dismiss his case because of some jurisdictional defect or mistake. And he has given no indication that he wants to dismiss <u>this</u> case so that he can bring <u>another</u> case in a different forum. See Pl.'s Reply at 6 n.7 ("Here, a subsequent suit is not likely to occur . . . . [B]arring any future disparagement there would be no cause for a succeeding action."). Instead, Guttenberg's "purpose for dismissal is to <u>terminate</u> the litigation, sparing the parties and the Court additional time and resources." <u>Id.</u> at 8 (emphasis added). This matter therefore does not fit comfortably into the typical attorney's-fees case, where there is a very real concern that the plaintiff will refile his complaint somewhere else and "render[] useless" the defendant's already-completed legal work. See <u>GAF Corp.</u>, 665 F.2d at 370.

Moreover, even if Guttenberg does restart this lawsuit at a later date, the Court is not persuaded that Emery's legal work can be categorized as "unnecessary" in the sense that it would be "useless" in that second litigation. Emery has filed a motion to dismiss and for attorney's fees, and he has responded to a motion to expedite discovery, a motion for a preliminary injunction, and a motion to seal this case. These motions—and the Court's orders on them—"served the salutary purpose of clarifying the law for the plaintiff[]." <u>SBM Wageneder Gesellschaft</u>, 113 F.R.D. at 663. And as Emery admits, this prior work helped to "narrow[] the scope and breadth of the case to just one claim for breach of contract." Def.'s Resp. at 7. All of this seems use<u>ful</u> to any future disparagement litigation between these dentists—not use<u>less</u>. See <u>McLaughlin v. Cheshire</u>, 676 F.2d 855, 857 (D.C. Cir. 1982) ("Defendants do not suffer harm from having to pay the full cost of defending an action in a proper forum, and plaintiffs should not be forced to pay for work that is being or will be used against them in ongoing litigation.").

6

Conditioning Guttenberg's dismissal on an attorney's-fees-and-costs award is therefore inappropriate at this juncture.

Emery disagrees. He implies that Guttenberg's filings—and Emery's responses to them—were unnecessary, because they "resulted in the Court's rejection of three of the four claims originally asserted by Plaintiffs." Def.'s Resp. at 7. But winning and losing has never been the stick by which courts have measured whether to impose fees-and-costs conditions. See SBM Wageneder Gesellschaft, 113 F.R.D. at 663 ("To condition a voluntary dismissal on an award of fees, the case law requires that defendant's efforts must have been unnecessary, not that the plaintiff must prevail."); Combo v. Viacom, Inc., 2007 WL 39410, at *1 (D.D.C. Jan. 5, 2007) (holding that whether plaintiff's arguments were "frivolous" was "irrelevant to the question of whether to award attorneys' fees and costs upon his motion to voluntarily dismiss the suit"). Put differently, the mere fact that Guttenberg lost on several preliminary issues does not entitle Emery to reimbursement for his expenses under Rule 41(a)(2). The federal rules—and the cases interpreting them—therefore do not require the Court to award fees in this case, and the Court, in its discretion, declines to do so.

    **b.**    **Attorney's Fees Under the Settlement Agreement**

Emery persists that the terms of the dentists' 2008 Settlement Agreement require a fees-and-costs award, even if the cases interpreting Rule 41(a)(2) do not. See Def.'s Resp. at 5–6. District of Columbia law governs the 2008 Settlement Agreement, see Settlement Agreement at 13 ("This Agreement shall be governed and controlled as to . . . interpretation . . . by the internal laws of the District of Columbia."), and the District follows the objective law of contracts, "meaning that the language of the agreement as it is written governs the obligations of the parties unless the language is unclear," Simon v. Circle Assocs., Inc., 753 A.2d 1006, 1012 (D.C. 2000).

If the language in the agreement is unclear or ambiguous, the Court may consider "[e]xtrinsic evidence of the parties' subjective intent" in forming the agreement. <u>Sears v. Catholic Archdiocese of Wash.</u>, 5 A.3d 653, 661 n.15 (D.C. 2010) (internal quotation marks omitted). Here, the settlement agreement contains two provisions relevant to this case, but neither entitles Emery to attorney's fees.

The first provision (which appears within the settlement's larger "Non-Disparagement" clause) is easily disposed of. Neither party considers the clause ambiguous, and an objective reading of the clause proves that it is inapplicable to this lawsuit. It says:

> A breach of this [non-disparagement] provision[] shall be considered a material breach, and the breaching party concedes . . . that the non-prevailing party shall be liable to the prevailing party for . . . the attorneys fees and costs <u>required by the prevailing party to obtain injunctive and/or compensatory relief or to enforce this provision</u>.

Settlement Agreement at 10 (emphasis added). True, this provision contemplates an attorney's-fees award based on non-disparagement litigation between the dentists. But by its own terms, the compensable attorney's fees are only those "required by the prevailing party to <u>obtain</u> injunctive and/or compensatory relief or to <u>enforce</u> this provision." <u>Id.</u> Emery has not spent any money to "obtain" relief or "enforce" the non-disparagement clause. Instead, he has incurred fees defending against <u>Guttenberg</u>'s attempts to "obtain" relief and "enforce" rights under the clause. This provision therefore does not entitle Emery to any attorney's fees or costs. <u>See</u> 5/16/2014 Mem. Op. at 17 n.10 (casting doubt on applicability of this clause to Emery's attorneys-fees claim).

But the second provision presents a more difficult question. In addition to the attorney's-fees portion of the non-disparagement clause, the 2008 Settlement Agreement includes a general fee-shifting provision, which states:

> In the event of any litigation among any of the parties arising out of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party his attorneys' fees and costs related to such litigation.

Settlement Agreement at 5. This provision seems to allow for the broad recovery of all "attorneys' fees and costs related to . . . litigation" that "aris[es] out of [the Settlement] Agreement."[2] Id. But it, too, contains an important limitation: Only the "prevailing party" gets to recover his fees and costs. Is Emery such a party?

The Court concludes he is not. Again, there is no need to consider extrinsic evidence here, as neither party argues that the "prevailing party" language is ambiguous. The Court will therefore use objective sources "to determine what a reasonable person in the position of the parties would have thought the disputed language meant," including dictionary definitions, previous court interpretations of these words, and the like. Travelers Indem. Co. v. United Food & Commercial Workers Int'l Union, 770 A.2d 978, 986 (D.C. 2001) (internal quotation marks omitted); see also Interstate Fire & Cas. Co. v. Wash. Hosp. Ctr. Corp., --- F.3d ---, 2014 WL 3538081, at *3 (D.C. Cir. July 18, 2014) (applying D.C. contract-interpretation principles). In this case, every objective source suggests that Emery is not a "prevailing party" within the meaning of the settlement agreement.

Consider first the usual dictionary definition of "prevailing party." A "prevailing party" is "[a] party in whose favor a judgment is rendered, regardless of the amount of damages

---

[2] While the language in this clause is undeniably broad, there is reason to think the provision might not cover all disputes between the dentists under the agreement, writ large. This clause appears as sub-paragraph "f" to paragraph "5" of the agreement. And paragraph 5, by its title, describes "Emery's Use of [the Dentists'] Premises after [the] Effective Date [of the Settlement Agreement]." Settlement Agreement at 4. One might therefore read sub-paragraph f narrowly, such that it only provides for fee-shifting based on litigation resulting from a dentist's breach of his paragraph 5 obligations. As the District of Columbia courts have held, context matters when interpreting contractual language. Steele Found., Inc. v. Clark Const. Grp., Inc., 937 A.2d 148, 155 (D.C. 2007) ("[O]ur interpretation is . . . supported by application of general contract law that provisions be construed in the context of the contract as a whole."). Guttenberg has not made this argument, however, so the Court will assume that the parties read sub-paragraph f in its broader sense, covering "any litigation . . . arising out of th[e] Agreement." Settlement Agreement at 5 (emphasis added).

awarded." Black's Law Dictionary (7th ed.) at 1145, 1206. Emery does not meet this description. Just because the Court has granted Guttenberg's motion to voluntarily dismiss this case does not mean Emery has had "judgment . . . rendered" in his favor. Rule 41(a)(2) dismissals, instead, have a far more modest effect: "[A]s numerous federal courts have made clear, a voluntary dismissal without prejudice under Rule 41(a) leaves the situation as if the action never had been filed." 9 Charles Alan Wright, et al., Federal Practice and Procedure § 2367 (3d. ed. 2014); see also Estate of Grant v. Armour Pharm. Co., 2007 WL 172316, at *3 (D.D.C. Jan. 23, 2007) ("[A] voluntary dismissal without prejudice leaves the parties as if the action had never been brought."). Confirming this point, the Supreme Court has noted that a Rule 41(a)(2) voluntary dismissal without prejudice is the "opposite" of an adjudication upon the merits. Semtek Int'l, Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001). "The primary meaning of 'dismissal without prejudice,'" the Court explained, "is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim." Id. All of this strongly suggests that Emery has obtained no "judgment" in his favor, which suggests in turn that he is not a "prevailing party" entitled to his attorney's fees and costs.

The established meaning of the words "prevailing party" in the statutory context echoes this understanding of the 2008 Settlement Agreement. Various federal laws allow a "prevailing party" to recover attorney's fees and costs at the close of litigation. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 602–03 (2001) (collecting statutes). But to be a "prevailing party" within the meaning of those statutes, a party must, at minimum, achieve some "material alteration of the legal relationship of the parties"—like a "judgment on the merits" or a "court-ordered consent decree." Id. at 604 (internal quotation marks omitted). Thus, the Supreme Court has held that a plaintiff is not a "prevailing party"

10

where the defendant <u>voluntarily</u> changes his conduct, because this outcome "lacks the necessary judicial *imprimatur* on the change." <u>Id.</u> at 605. So too here, where Guttenberg's <u>voluntary</u> dismissal of his case without prejudice works no judicially sanctioned change in the parties' legal relationship (i.e., Guttenberg is free to bring his claim again, and Emery is still subject to a later lawsuit). To be sure, the 2008 agreement's fee-shifting clause need not parrot the statutory meaning of such provisions, but the Court finds these statutes—and the Supreme Court's interpretation of them—persuasive on the objective meaning of "prevailing party" in this contract. <u>Cf.</u> <u>Wilcox v. Sisson</u>, 2006 WL 1443981, at *12 (D.D.C. May 25, 2006).

  Finally, courts in the District of Columbia attach similar meaning to the words "prevailing party" in both the statutory and contractual context. Regarding statutes with fee-shifting provisions, the D.C. courts have observed that "[g]enerally speaking, the term 'prevailing party' is understood to mean a party 'who has been awarded some relief by the court' (or other tribunal)." <u>Settlemire v. D.C. Office of Emp. Appeals</u>, 898 A.2d 902, 907 (D.C. 2006) (quoting <u>Buckhannon Bd. & Care Home, Inc.</u>, 532 U.S. at 603)). And the D.C. courts have been even clearer regarding contractual fee-shifting provisions: To "meet the threshold requirement" of a "prevailing party," the party must "prevail <u>on the merits</u>." <u>Fleming v. Carroll Pub. Co.</u>, 621 A.2d 829, 837 (D.C. 1993) (applying lease agreement's fee-shifting clause); <u>see also</u> <u>Chang v. Louis & Alexander, Inc.</u>, 645 A.2d 1110, 1115–16 (D.C. 1994) (holding that both plaintiff and defendant could be "prevailing part[ies]" within meaning of lease agreement, because both parties achieved some judgment on the merits of their claims (or counterclaims) at trial). Emery will not receive any "relief" from the Court based on Guttenberg's voluntary dismissal, and he certainly has not won "on the merits" of Guttenberg's breach-of-contract claim. Thus, Emery is not a "prevailing party" by any objective definition of the term.

The cases Emery cites do not support a different result. He first relies on Franklin Financial v. Resolution Trust Corp., 53 F.3d 268 (9th Cir. 1995), and Rushing v. Caribbean Food Products, 870 So. 2d 953 (Fla. Dist. Ct. App. 2004), for the proposition that a defendant can be a "prevailing party" under a contractual fee-shifting provision when the plaintiff voluntarily dismisses his lawsuit. See Def.'s Resp. at 6. But even forgetting that these cases arise under Oregon and Florida law, respectively, and therefore tell the Court little about how the District of Columbia might read "prevailing party" clauses, there are several problems with applying these cases here. For starters, neither court definitively held that a plaintiff's voluntary dismissal must give a defendant prevailing-party status, but instead only found no abuse of discretion in the trial courts' attorney's-fees awards. See Franklin Fin., 53 F.3d at 273; Rushing, 870 So. 2d at 954. The trial courts presumably could have come out the other way. Moreover, neither court made clear whether the voluntary dismissal at issue was with or without prejudice. The distinction can matter, see U.S. Foodservice, Inc. v. Shamrock Foods Co., 246 F. App'x 570, 579–81 (10th Cir. 2007) (discussing the impact of "prejudice" on a prevailing-party finding), and without any analysis on this point, it is difficult to say what these holdings mean for Guttenberg's case. Finally, neither court interpreted the term "prevailing party" in light of Rule 41(a)(2), the operative rule here. See Franklin Fin., 53 F.3d at 273 (applying Rule 41(a)(1)(i)); Rushing, 870 So. 2d at 954–55 (applying Florida Rule of Civil Procedure 1.420).

Emery's reliance on Texas v. United States, --- F. Supp. 2d ---, 2014 WL 2758597 (D.D.C. June 18, 2014), fares no better. See Def.'s Resp. at 6. That case stands for the proposition that "[p]revailing-party status in [the D.C. Circuit] . . . is not . . . limited" to those parties who win judgment on the merits or obtain a court-ordered consent decree. Texas, 2014 WL 2758597, at *6 (discussing Buckhannon Bd. & Care Home, Inc., 532 U.S. at 605). But

12

while the court in Texas recognized that a broad universe of outcomes can satisfy the Buckhannon test, the case did not throw open the prevailing-party door to all comers. True, "prevailing-party status may result from a favorable jurisdictional ruling, a grant of preliminary injunction, or even a judicially-sanctioned stipulation," id., but Emery has achieved none of those things. And all of those prevailing-party options entail a key ingredient, missing in this case: "a judicial pronouncement accompanied by judicial relief." Id. (emphasis added, internal quotation marks and alterations omitted). Emery has not won any "relief" and, therefore, does not fall under the D.C. Circuit's more expansive prevailing-party umbrella.

In a final argument, Emery contends that he should get at least partial reimbursement for his attorney's fees and costs, based on the Court's ruling on Emery's previous motion to dismiss Guttenberg's case. See Def.'s Sur-Reply at 3 ("[T]his Court should . . . award Dr. Emery his attorneys' fees and costs for prevailing on all of the claims the Court has dismissed (which included all counts in the Complaint save one)."). But this argument is a non-starter. For one thing, Emery did not raise this argument in his initial response to Guttenberg's motion for voluntary dismissal, and so the point is—arguably—waived. See Seminole Nation of Ok. v. Norton, 2002 WL 1364249, at *1 (D.C. Cir. May 24, 2002) ("As an initial matter, appellant arguably waived its arguments . . . by failing to raise them in its response to the motion to dismiss."). For another, Emery has already moved for attorney's fees based on his (limited) success in the previous motion to dismiss, and the Court has already denied that motion. As the Court wrote then, "[b]ecause the Court does not now grant defendant's motion to dismiss as against Emery (the only defendant who is a party to the [2008 Settlement] Agreement), no party has prevailed yet, and awarding fees would be premature." 5/16/2014 Mem. Op. at 17 (emphasis added). The Court did not think Emery deserved attorney's fees based on his motion to dismiss

13

then, and it sees no reason to change its mind now.  That holding remains the law of this case.  See Arizona v. California, 460 U.S. 605, 618–19 (1983) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

For all these reasons, Emery is not entitled to his attorney's fees under the 2008 agreement.

## **CONCLUSION**

The Court will grant the plaintiff's motion to voluntarily dismiss his case without prejudice and without conditions.  A separate Order has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  September 23, 2014